1               IN THE UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF ILLINOIS

3  UNITED STATES OF AMERICA, )
                             )
4           Plaintiff,       )
                             )
5  vs.                       )  No. 07-CR-40037
                             )
6  JACOB L. MESSIC,          )
                             )
7           Defendant.       )

8

9                    REPORT OF PROCEEDINGS

10                     Sentencing Hearing

11

12          BE IT REMEMBERED AND CERTIFIED that heretofore on

13  November 13, 2008, the same being one of the regular judicial

14  days in and for the United States District Court for the

15  Southern District of Illinois, Honorable J. Phil Gilbert

16  presiding, the following proceedings were had in open court

17  in Benton, Illinois, to-wit:

18                          APPEARANCES

19  Ms. Amanda Robertson
    Asst. U.S. Attorney                    For the Plaintiff

20
    Mr. Justin A. Kuehn
21  Appointed Counsel                      For the Defendant

22
                       JANE McCORKLE
23                 Official Court Reporter
                    U.S. District Court
24                   301 W. Main Street
                   Benton, Illinois 62812
25                 janemccorkle@verizon.net

1

```
1              THE CLERK:  United States of America versus
2    Jacob L. Messic, case number 07-40037.  This matter is set
3    for disposition.  Are all the parties ready?
4              MS. ROBERTSON:  The government's ready through
5    Assistant United States Attorney Amanda Robertson.
6              MR. KUEHN:  Your Honor, Justin Kuehn on behalf of
7    the defendant, Jacob Messic.  We are ready to proceed.
8              THE COURT:  Let the record show that the defendant,
9    Jacob Messic, is present in court with counsel, Mr. Kuehn.
10   Ms. Robertson's present on behalf of the government.  This
11   matter comes before this Court for sentencing.
12             Mr. Messic, will you please stand.  A written
13   Presentence Investigation Report has been prepared by
14   Probation to assist me in sentencing you.  Have you received
15   a copy of that report?
16             THE DEFENDANT:  Yes, sir.
17             THE COURT:  Have you had a chance to read it?
18             THE DEFENDANT:  Yes, Your Honor.
19             THE COURT:  Are there any errors, corrections,
20   alterations, or additions to the report which you wish to
21   make to it?
22             THE DEFENDANT:  No, Your Honor.
23             THE COURT:  Mr. Kuehn, does the defendant have any
24   objections to the report at this time that would affect the
25   advisory guideline range?
```

```
 1              MR. KUEHN:  No, Your Honor.

 2              THE COURT:  You may be seated.  Does the government

 3  have any objections to the report that would affect the

 4  advisory guideline range?

 5              MS. ROBERTSON:  No, Your Honor.

 6              THE COURT:  There being no objections to the

 7  probation officer's Presentence Investigation Report, the

 8  Court hereby adopts the Presentence Investigation Report and

 9  the findings contained therein as the findings of this Court,

10  including the finding that the offense level for the counts

11  of conviction, being bank robbery with a dangerous weapon,

12  brandishing a firearm during and in relation to a crime of

13  violence, brandishing a firearm during or in relation to a

14  crime of violence.

15              We have under Count 1, the bank robbery.  Start out

16  with a base level offense of 20 and a two-point enhancement

17  as the financial institution, property of a financial

18  institution was taken, another one point enhancement as the

19  loss is more than $10,000, for an adjusted Offense Level of

20  23.

21              For Count 4, the bank robbery, we have, again, a

22  base level offense of 20, another two-point enhancement for

23  property of a financial institution, another two-point

24  enhancement the offense resulted in bodily injury to a bank

25  employee as the co-defendant struck the employee with a gun,
```

1    another one-point enhancement as the loss is more than

2    $10,000, and a victim related adjustment of an 81-year old

3    employee of the Elkville State Bank was injured by the

4    co-defendant during the robbery, another two-point

5    enhancement which renders an adjusted Offense Level of 27.

6          The adjusted offense levels for group 1, 23, and

7    group 2 of 27 each have two units, which you add the two

8    units to the 27, rendering a combined adjusted Offense Level

9    of 29, three points off for acceptance of responsibility,

10   rendering a total offense level for guideline application of

11   26, Criminal History Category of III, a statutory provision

12   on Counts 1 and 4 of not more than 24 years, on Count 2 not

13   less than 7 years consecutive, and Count 5 not less than 25

14   years consecutive.

15         Guideline provisions on Counts 1 and 4 are 78 to 97

16   months; Count 2 is 84 months consecutive to Counts 1 and 4;

17   and Count 5, 300 months consecutive to Count 2, for a total

18   guideline, advisory guideline and statutory combined

19   imprisonment term of 462 months.

20         There is a supervised release range on Counts 1, 2,

21   4, and 5 of 3 to 5 years, a fine range of 12,500 to 125,000,

22   restitution amount of $49,298 and a $100 special assessment

23   on each count of conviction.  Any objections to those

24   guideline range findings?

25         MS. ROBERTSON:  The government has no objections to

1    the guideline range findings.  However, I would note as the

2    Court was reading the specific characteristics in paragraph

3    51 and 53, I did note a factual error.  It doesn't affect the

4    guidelines at all.  This may be copied from Rodney Messic's.

5    Instead of saying a co-defendant on both of those, it should

6    be defendant.

7              THE COURT:  Defendant.

8              MS. ROBERTSON:  Defendant.

9              THE COURT:  Okay.

10             MS. ROBERTSON:  I apologize I didn't catch that

11   earlier.  It doesn't affect the guideline range.

12             MR. KUEHN:  The government's ready, Your Honor, and

13   we don't have any objection.

14             THE COURT:  Okay.  That modification will be made.

15   Again, any objections to --

16             MS. ROBERTSON:  No, Your Honor.

17             THE COURT:  Mr. Kuehn?

18             MR. KUEHN:  No, Your Honor.

19             THE COURT:  Ms. Robertson.

20             MS. ROBERTSON:  Your Honor, as you know, this is a

21   negotiated plea.  And both parties have agreed that they will

22   recommend sentencing at the low end of the guideline range.

23             THE COURT:  I received some victim-related

24   statements.  Are there any victims here?

25             MS. ROBERTSON:  No, Your Honor, and in lieu of

1  Mr. Bud Havens testifying today or attending, we did indicate

2  we would submit pictures as exhibits of Mr. Havens and his

3  injuries, and I've provided those to defense counsel.

4          And just briefly, Your Honor, picture one would be

5  after Mr. Havens was struck in the head with the gun.

6  Government's 2 would be where he was grabbed by the defendant

7  on the arm.  3 is the bruising from being grabbed on the

8  other arm.  Government's 4 would be the bruising to the left

9  hand and wrist.  And then 5 would be a full upper body view

10 of Mr. Havens and his injuries.  And he chose not to appear

11 today in lieu of us submitting the pictures.

12         THE COURT:  The exhibits will be admitted.

13         MS. ROBERTSON:  Thank you, Your Honor.  Again, the

14 government's asking for the end, which is the 462, the

15 restitution in the amount of $49,298.  And looking at the

16 3553 sentencing factors, Your Honor, we think the guideline

17 range is appropriate in this case, and whereas this Court

18 gave the co-defendant, Rodney Messic, the high end of the

19 guideline range, we believe the low end is appropriate in

20 Mr. Messic's case.

21         The sentencing factors, the nature and

22 circumstances, as the Court's aware, as set forth in the PSR,

23 John Brown set plans in motion to rob numerous banks.

24 Thereafter, the defendant and Rodney Messic went into

25 numerous, multiple banks armed with guns, threatened to burn

6

1   houses down.  Ultimately, the defendant struck an 81 year old

2   man and threatened to kill him.

3        When you look at the characteristics of the

4   defendants -- and the government's read the letters -- and

5   think that there is certainly some truth in those letters,

6   this defendant on some level has been a victim.  The one

7   thing I would note in the letters, a couple of the letters

8   indicate the defendant was 19 when these offenses were

9   committed.  He would have been 21 when these offenses were

10  committed.  I think here today he's 23.

11        And if you look at the dynamics of the three

12  co-defendants in this case, you have the 63-year old John

13  Brown, 57-year old Rodney Messic, and 21-year old Jacob

14  Messic.  As the letters indicate, certainly Rodney wouldn't

15  have been a candidate for father of the year by any

16  definition.  Did not do a good job.  Did not appear to be a

17  good role model for this defendant, and it looked like during

18  the investigation or during the PSR, John Brown, who is the

19  smartest of the three, the shrewdest of the three, probably

20  at some point kind of took over for Rodney as far as being

21  Jacob's father figure.

22        It's my understanding from speaking with the agents

23  on some level, Jacob Messic looked up to John Brown.  John

24  Brown filled that void that Rodney didn't provide.  And,

25  unfortunately, John Brown was not a good influence either.

1          So the government agrees that as to these three

2   defendants, co-defendants, the defendant is to some extent a

3   victim, but the government requests the Court not to lose

4   sight of who the true victims in this case are.  And the true

5   victims are 81-year old Bud Havens; his daughter, Julie

6   Brylie (phonetic), who watched her elderly father get beaten

7   and threatened, and the other bank tellers who simply go to

8   work every day attempting to earn an honest living, and

9   certainly by no definition would ever deserve to have people

10  come in, put guns in their face, threaten them, take money.

11          As far as the need for the sentence imposed, and

12  there's no question that the sentence that this Court imposes

13  is going to be a substantial sentence, but the government

14  asserts that there are few offenses that are more serious

15  than these that are before the Court today.  It's going to

16  provide -- the sentence imposed is going to provide just

17  punishment and to afford adequate deterrence, and we think

18  the sentence has to be substantial to afford deterrence to

19  others.  We simply can't have people doing what these three

20  individuals were doing.

21          Another statutory factor as to protect the public

22  from the future crimes of the defendant.  Who knows.  Nobody

23  has a crystal ball.  We know what this defendant has done in

24  the past from looking at the letters.

25          From agents who have spoken with the defendant, it

1    appears that this defendant has made positive strides since

2    the time of his arrest.  Of the three co-defendants, Jacob

3    Messic is the one who cooperated immediately from the time of

4    his arrest, i.e., provided a truthful post arrest statement.

5    He provided information to the agents anytime they talked to

6    him.  Cooperative.  They found him to be respectful.  And

7    there's no question.  The government will be before this

8    Court at a later time on a Rule 35 based on substantial

9    assistance.

10           And I would tell the Court that if not for Jacob

11   Messic's information and cooperation, the government would

12   not have been able to indict John Brown.  So the reason we

13   were able to get the mastermind together regarding the

14   planner is because of the cooperation and truthful

15   information provided by Jacob Messic.

16           It also looks like from the letters the defendant

17   has formed many positive relationships while incarcerated.

18   The inmate's family has, basically, taken him under their

19   wing.  It looks like those are positive relationships and,

20   hopefully, those continue during the defendant's

21   incarceration.

22           So we believe that for purposes of today, a low end

23   sentence is absolutely appropriate.  These are serious,

24   serious, and we request a serious sentence.

25           THE COURT:  What's happened with the cases in

1    Kentucky?

2            MS. ROBERTSON:  My understanding is the prosecutor,

3    they've not made their first appearance on those cases is the

4    short answer.  I think the prosecutor is waiting to see what

5    happens here.  That's my understanding.  We've made no deal

6    with Kentucky.  My sense in talking to him is he has to see

7    the sentences before he decides whether he's going to desire

8    to spend the money to prosecute them or not.

9            THE COURT:  Thank you.  Mr. Kuehn.

10           MR. KUEHN:  Thank you, Hour Honor.  Much of what I

11   intend to say will be acclimating some of the things

12   Ms. Robertson said.  I want to talk about the letters that

13   were submitted on behalf of Mr. Messic and talk about one in

14   particular that was sent by Jacob's sister, Ashley Messic,

15   who is here today.  Obviously, she's emotional.

16           She described her father, Rodney Messic, as a mean

17   and manipulative man.  And I think that that comes into play

18   here, and that's not going to excuse what Jake Messic has

19   done, but I think it gives some context.

20           Mr. Rodney Messic was prone to manipulating his

21   children by telling them incorrectly that he was a dying man

22   and asking them to do things because he was dying.  And I

23   don't know if Your Honor recalls, but you asked Jake Messic

24   at his plea how he got involved in this in the first place,

25   what led him down this path.  You may recall him explaining

1   to you that his father told him that he was behind on child

2   support, that he was dying of lung cancer, and that if they

3   didn't rob a bank and get money soon, he was going to die in

4   prison.

5          Now, a lot of people have difficulties in their

6   life and they don't get to rob banks just because they are

7   going through hardship or they think their father is going

8   through hardship, but in terms of looking at the

9   characteristics of this young man as you must do under

10  3553(a), I think that provides some context of how Jacob

11  Messic got wrapped up in this in the first place.

12         We are all on some level a product of our

13  upbringing.  I have a father who paid for my law school and

14  brought me into his law firm, and now I'm a lawyer.  Jake

15  Messic had a father who introduced him to drugs, beat him,

16  basically taught him how to become a criminal and what

17  happened?  Jacob Messic turned into a criminal.  I think

18  that's something the Court should consider in determining

19  what is an appropriate sentence.  He lacked absolute guidance

20  growing up.  And the next father figure that he found was

21  John Brown, who was no better and was probably worse and

22  masterminded these events, as Ms. Robertson explained.

23         Also, like the government pointed out, Jake Messic

24  has taken very positive strides from the start.  He came in

25  and gave not one, but several, cooperative statements.  He

1   explained, you know, all of the bank robberies, the robbery

2   involving the pharmacy.  He explained them and he explained

3   them coherently, which is something his father was not able

4   to do.  He had credibility.  He was a truth teller from the

5   start.  And I agree with the government.  He is the reason

6   why John Brown did not get a pass on this.

7           Also, he has developed relationships which shows

8   his desire to grow in a positive direction since he's been

9   incarcerated, and we anticipate that throughout the course of

10  this, what is going to be a lengthy incarceration, he will

11  continue to take steps toward bettering himself so then when

12  the time comes, he will be able to come out, but he will be

13  better for it.  Judge, we think the factors in 3553 are more

14  than taken care of by a low end guideline sentence, and

15  pursuant to the plea agreement, that's what we ask you to

16  impose.

17          THE COURT:  Okay.  Mr. Messic, will you and your

18  counsel please approach the podium.  Is there anything you

19  wish to say or offer in mitigation before this Court imposes

20  sentence?

21          THE DEFENDANT:  Your Honor, I know of nothing I can

22  say to make anything that I've done better.  There's not a

23  day that goes by that I don't feel sorrow or regret for the

24  things that I've done or for the people that I did them to.

25  I have to live with this for the rest of my life, and it's

1  hard enough as it is the way people look at me and I just --

2  I know what I done was wrong.  I did it for what I thought

3  was the right reason and I'm sorry.

4            I've let down a whole lot of my family, who you see

5  here today.  I let them down in a very big way, and that

6  hurts just as bad.  Because I know that if given a chance,

7  they all would have helped me instead of doing things that I

8  did.

9            THE COURT:  Why didn't you reach out to them?

10           THE DEFENDANT:  At the time I honestly didn't think

11  they liked me very much and --

12           THE COURT:  Now, what in the world gave you that

13  idea?

14           THE DEFENDANT:  Because I was a waste.

15           THE COURT:  You're not a waste.

16           THE DEFENDANT:  Just been the way I've always

17  looked at it, I guess.  But --

18           THE COURT:  All right.  Now, what's done is done.

19  You can't change it.  I can't change it.

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  That's in the past.

22           THE DEFENDANT:  Yes, sir, Your Honor.

23           THE COURT:  Now, tell me about what the present and

24  the future of Jacob Messic is going to be.

25           THE DEFENDANT:  Now I have to look forward, and

1   I've had two years sitting in jail to sit and realize that a

2   lot of the ways that I went about life were wrong, and I've

3   had a lot of time to sit and think about how to correct those

4   ways.  I have to take advantage of every opportunity laid in

5   front of me from here on out for the rest of my life because

6   it's not going to be easy.  It's going to be very hard.  And

7   sometimes doing the easy thing isn't always or doing the

8   right thing isn't always the easy thing, but I got to quit

9   looking at trying to do the easy thing, so now I've got to do

10  the right thing.

11          I've got plenty of family that's going to support

12  me, and I know that with a great amount of certainty that

13  I'll never be in this position again.  And I just -- I just

14  hope that everybody can forgive me because I know what I did

15  was really wrong.  And I have a long road ahead of me to try

16  everything I can and correct those mistakes.  And I'm going

17  to live every day of my life until the day that I die to try

18  to correct those mistakes.

19          THE COURT:  Well, Mr. Messic, your family has

20  forgiven you because they're here.  It's never too late to

21  start over.  I don't care how young you are or how old you

22  are.  You know, this is not easy even for me.

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Sentencing you to almost 40 years for

25  what you have gone through and the advantage that your father

1  and Brown took advantage of you.  I'm sure this isn't even

2  easy on Ms. Robertson.  But, you know, what you did was

3  horrendous, uncalled for, even.

4          You know, if someone told you -- I think I might

5  have mentioned this to you at your plea.  If someone asks you

6  to stick your head in the fire, would you do it?  And you did

7  and you got burned.  And -- but you've done -- you've started

8  doing the right thing by cooperating with the government, I'm

9  sure, with the assistance of Mr. Kuehn, who is an excellent

10  lawyer, that has done the best he could for you under

11  circumstances that he couldn't do anything about.

12          THE DEFENDANT:  The very best.

13          THE COURT:  You did what you did.  And all I can

14  say is that try to start your new life over again.  You know,

15  the Bureau of Prisons has opportunities that you can better

16  yourself.  You know, I'm looking, reading your history.  That

17  you appear to be a very intelligent individual.  You obtained

18  above average grades and scored well on your GED test, and

19  your previous employers had positive comments regarding your

20  work performance, so you have a lot going for you.

21          You're going to have to stay out of trouble in

22  prison.  Prison's not a nice place to be.  And because of

23  your sentence, you know, you're not going to be eligible for

24  any kind of a work camp or anything like that for quite a few

25  years.  But you're going to have to make the best of a bad

1    situation.  And you can do it.  Try to further your

2    education, get a degree.

3           What would you like to do in life?  What's your

4    passion?  What would you love to be?

5           THE DEFENDANT:  I would like to be an electrician

6    like I started out.

7           THE COURT:  Become an electrician when you get out.

8    And you will get out.  This is not the end.  You will get out

9    and you will be starting your life over again.  Be an

10   electrician.

11          And you're right.  The easy way is not the right

12   way.  Life's tough.  It's not meant to be easy.  People are

13   supposed to work for what they get, not have anything given

14   to them.  And people aren't supposed to have things taken

15   from them.

16          Anything else you wish to say?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  You know, when the Court considers the

19   3553(a) factors which Ms. Robertson went through, I couldn't

20   agree more with what she said.  You know, there are some

21   3553(a) factors that mitigate, but more 3553(a) factors

22   aggravate what you did.

23          And the Court's considered all the information in

24   the presentence report including guideline computations and

25   factors set forth in 18 USC 3553(a).  Pursuant to the

1   Sentencing Reform Act of 1984, it will be the judgment of

2   this Court that the defendant, Jacob L. Messic, is hereby

3   committed to the custody of the Bureau of Prisons to be

4   imprisoned for a term of 78 months on each of Counts 1 and 4

5   to run concurrently to each other.  The defendant is

6   sentenced to 84 months on Count 2, which is imposed to run

7   consecutively to Counts 1 and 4, and you are sentenced to 300

8   months imprisonment on Count 5, which is imposed to run

9   consecutively to Count 2, for a total custody of 462 months.

10        It is further ordered that you shall pay to the

11   United States a special assessment of $400, and the special

12   assessment is payable through the Clerk of the U.S. District

13   Court.  A fine is waived in light of restitution that the

14   Court is going to order you to pay.

15        It is further ordered that you shall make

16   restitution in the amount of $49,298 to the following payees:

17   First Neighbor Bank, Casey, Illinois, for $23,000; Harris

18   Bank, Chicago, Illinois, for $5,711; Bank Insurer, Oklahoma

19   City, for $5,380; Progressive Casualty Insurance in the

20   amount of $5,207, and the Elkville State Bank in the amount

21   of $10,000.

22        Restitution is due immediately.  Due to your

23   inability to pay, the Court will waive the interest.

24   Restitution is to be paid joint and several with

25   co-defendants Jacob Messic and John Brown.  The victims --

1    PROBATION OFFICER MILLER:  It's Robert Messic.

2    THE COURT:  What did I say?

3    PROBATION OFFICER MILLER:  Jacob Messic.

4    THE COURT:  That's because it says Jacob here.

5    PROBATION OFFICER MILLER:  That's our mistake.

6    THE COURT:  Okay.  Co-defendant Robert Messic and

7    John Brown.  The victims' recovery is limited to the amount

8    of their loss, and the defendant's liability for restitution

9    ceases if and when the victims receive full restitution.

10    If the defendant is unable to pay restitution

11    immediately, payment is due during imprisonment.  While

12    confined you shall pay restitution at the rate of $25 per

13    quarter or 50 percent of your prison wages if working in

14    Unicor.  You're required to notify the Court and the Attorney

15    General of any material change in your economic circumstances

16    that would affect your ability to pay restitution.

17    Upon release from imprisonment, you shall be placed

18    on supervised release for a term of 5 years.  Within 72 hours

19    of release from the custody of the Bureau of Prisons, you

20    shall report in person to the Probation Office in the

21    district to which you are released.

22    While on supervised release, you shall not commit

23    another federal, state, or local crime and shall comply with

24    the standard conditions that have been adopted by this court.

25    You shall refrain from the use of a controlled

1   substance.  You shall submit to one drug test within 15 days

2   after being released on supervision and at least two periodic

3   drug tests thereafter not to exceed 52 tests in any one-year

4   period.

5          You shall not possess a firearm or destructive

6   device.  You shall cooperate in the collection of DNA as

7   directed by the probation officer.

8          In addition, you shall comply with the following

9   special conditions:  You shall pay any financial penalty that

10  is imposed by this judgment and that remains unpaid at the

11  commencement of the term of supervised release.  Having

12  assessed your ability to pay, payment of the total criminal

13  monetary penalty shall be paid in equal monthly installments

14  of $50 or 10 percent of your net monthly income, whichever is

15  greater, over a period of 60 months to commence 30 days after

16  release from imprisonment to a term of supervision.

17         You shall provide the probation officer and the

18  Financial Litigation Unit of the United States Attorney's

19  Office with access to any requested financial information.

20  You are advised that the Probation Office may share such

21  information with the Financial Litigation Unit.

22         You shall apply all monies received from income tax

23  refunds, lottery winnings, judgments and/or any other

24  anticipated or unexpected financial gains to the outstanding

25  court ordered financial obligation.  You shall immediately

1    notify the probation officer of the receipt of any indicated

2    monies.

3            Due to your history of alcohol and substance abuse,

4    you shall participate as directed and approved by the

5    probation officer in treatment of narcotic addiction, drug

6    dependence or alcohol dependence which includes urinalysis or

7    other drug detection measures and which may require residence

8    and/or participation in a residential treatment facility or

9    residential reentry center.  The number of drug tests shall

10   not exceed 52 tests in any one-year period.  Any

11   participation will require complete abstinence from all

12   alcoholic beverages.

13           You shall pay for the costs associated with

14   substance abuse counseling and/or testing based on a copay

15   sliding fee scale as directed and approved by the United

16   States Probation Office.  Copay shall never exceed the total

17   cost of counseling.

18           As you possessed firearms, you shall submit your

19   person, residence, real property, place of business, computer

20   or vehicle to a search conducted by the United States

21   probation officer at a reasonable time and in a reasonable

22   manner based on reasonable suspicion of contraband or

23   evidence of a violation of a condition of supervision.

24   Failure to submit to a search may be grounds for revocation.

25           You shall inform any other residents that the

1   premises may be subject to a search pursuant to this

2   condition.

3          I need to advise you, you can appeal your

4   conviction if you believe that your guilty plea was somehow

5   unlawful or involuntary or if there is some other fundamental

6   defect in the proceedings that was not waived by your guilty

7   plea.  You also have a statutory right to appeal your

8   sentence under certain circumstances, particularly if you

9   think the sentence is contrary to law.  However, a defendant

10  may waive those rights as part of a plea agreement, and you

11  have entered into a plea agreement which waives some or all

12  of your rights to appeal the sentence itself.  Such waivers

13  are generally enforceable, but if you believe the waiver is

14  unenforceable, you can present that theory to the appellate

15  court.  With few exceptions, any notice of appeal must be

16  filed within ten days of judgment being entered in your case.

17  If you cannot afford the services of an attorney to handle

18  your appeal, one will be appointed for you.  Do you

19  understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  The Court is also going to recommend

22  once you qualify under their BOP guidelines, that you

23  participate in the intensive drug rehab program offered

24  through the Bureau of Prisons and will also recommend that

25  they provide whatever mental and emotional health counseling

1    they can do while incarcerated.

2              There is a pending motion for contact visit.  I'm

3    going to allow Mr. Messic to have a few minutes with his

4    family out here.  And I understand that he had a contact

5    visit that was arranged by probation?  Is that --

6              PROBATION OFFICER MILLER:  It wasn't a contact

7    visit.  It was an hour long visit.

8              THE COURT:  An hour long visit.  He can have some

9    contact back here.  Anything further, Ms. Robertson?

10             MS. ROBERTSON:  No, Your Honor.  Thank you.

11             THE COURT:  What's the sheriff telling you?

12             MS. ROBERTSON:  We're just discussing the contact

13   visit.

14             THE COURT:  Oh.

15             MS. ROBERTSON:  Then is the Court denying the filed

16   motion then, allowing the visit here in court today?

17             THE COURT:  The visit in court, yes.  Where is he

18   housed?

19             MS. ROBERTSON:  Jackson County.

20             THE COURT:  Well, I usually let the counties decide

21   for themselves, but he can have a contact visit here.  And

22   then in the future if -- I don't know how much longer he's

23   going to be here before he's transferred to the Bureau of

24   Prisons.  Are you still going to need him in the district for

25   a while?

```
 1              MS. ROBERTSON:  I don't know.  I think Mr. Wepsiec
 2   has a case with him still pending.
 3              THE COURT:  Okay.  Well, if there's any future
 4   contact visit, that's going to be up to the sheriff's office
 5   in the county.  I do not interfere with their rules and
 6   regulations.
 7              MS. ROBERTSON:  Thank you.
 8              THE COURT:  Anything else, Mr. Kuehn?
 9              MR. KUEHN:  No, Your Honor.
10              THE COURT:  That will be all.
11      (End of hearing.)
12
13                      REPORTER'S CERTIFICATE
14
15              I, Jane McCorkle, Official Court Reporter for the
16   United States District Court for the Southern District of
17   Illinois, do hereby certify that the above and foregoing is a
18   true and correct transcript of the proceedings of Sentencing
19   had in this cause as same appears from my stenotype notes
20   made personally during the progress of said proceedings.
21
22
23   DATE:   11/17/08             s/s Jane McCorkle
24                                  JANE McCORKLE
25
```